UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BOGDAN V. GEREZ,

Plaintiff,

v.

R. CASTRO, et al.,

Defendants.

Case No. 1:21-cv-01431-EPG (PC)

FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED ONLY ON PLAINTIFF'S FOURTH AND EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANT CASTRO

(ECF No. 9)

OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS

ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE AND SEND PLAINTIFF A COURTESY COPY OF THE FIRST AMENDED COMPLAINT

Plaintiff Bogan V. Gerez is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 6, 9). This matter is before the Court for screening of Plaintiff's first amended complaint. (ECF No. 9).

## I. BACKGROUND

Plaintiff filed his complaint on September 29, 2021, bringing excessive-force, cruel-and-unusual-punishment, retaliation, and due-process claims against Defendants R. Castro, R. Roacho, and P. Arredondo. (ECF No. 1). On November 16, 2021, the Court entered a screening order, concluding that Plaintiff stated Fourth and Eighth Amendment claims against Defendant

Castro but that no other claims should proceed past the screening stage. (ECF No. 8). The screening order gave Plaintiff thirty days to either file a first amended complaint, notify the Court in writing that he did not want to file an amended complaint and instead wanted to proceed only on his Fourth and Eighth Amendment claims against Defendant Castro, or notify the Court in writing that he wanted to stand on his complaint. On December 16, 2021, Plaintiff filed a first amended complaint, which is now before the Court for screening.

For the reasons given below, the Court will recommend that this case proceed on Plaintiff's Fourth and Eighth Amendment claims against Defendant Castro and that the due-process claim against Defendant Arredondo be dismissed. Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

As Plaintiff is proceeding *in forma pauperis*, the Court also screens the complaint under 28 U.S.C. § 1915. (ECF No. 6). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## III. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's first amended complaint brings three claims concerning events happening at Pleasant Valley State Prison and names the following two prison officials as Defendants: (1) R. Castro of the Investigative Services Unit (ISU); and (2) P. Arredondo, Senior Hearing Officer. (ECF No. 9, p. 6).[1]

On October 2, 2019, at approximately 9:00 a.m., Plaintiff was on his way to "D-Yard" when ISU K-9 officers entered "Building (D-3)" to perform cell searches. (*Id.* at 7). "Upon release, Plaintiff was stopped and pulled over to the side by Corrections Officer (C/O) R. Castro. . . ." (*Id.*). Defendant Castro accused Plaintiff of making "police siren noises" when all the correctional officers had entered "Building (D-3)." (*Id.*). Plaintiff explained that he did not make these noises. (*Id.*).

However, Castro ordered Plaintiff to step inside the "Lower A-Section shower." (*Id.*). Castro raised his hands up and told Plaintiff that, "if you think you're a tough guy, make your move right now," trying to provoke Plaintiff to a fight. (*Id.*). After Plaintiff declined to fight, Castro ordered Plaintiff to submit to a "strip search (unclothed body search)," directing "Plaintiff to bend over at his waist and spread his ass cheeks, with his fingertips near his

[1] For readability, minor alterations, such as correcting misspellings and altering capitalization and punctuation, have been made to quoted portions of Plaintiff's first amended complaint without specifically indicating the changes.

asshole, and cough roughly (9) nine times." (*Id.*). Castro then ordered "Plaintiff to lift his nutsack up multiple times, then order[ed] the Plaintiff to pull the foreskin on his penis down multiple times, telling the Plaintiff that he's not doing it exactly how he's ordering the Plaintiff to do it." (*Id.*). Then Castro ordered Plaintiff, "very angrily, to put his fingers in his mouth (both fingers) and swirl them around both his gum lines." (*Id.*). Afterwards, Castro ordered Plaintiff to go back to his assigned housing. (*Id.*).

No more than five minutes later, Castro came up to Plaintiff's cell door and ordered the Plaintiff to go into the "Upper (A-Section) shower" and locked the shower door. (*Id.*). Castro then searched and "trash[ed]" Plaintiff's cell. (*Id.* at 8). Castro brought a K-9 dog to sniff search the cell for any drugs but did not find anything. (*Id.*). Castro ordered Plaintiff to go downstairs, and Plaintiff was made to sit in a chair towards the middle of the dayroom so that the K-9 dog could sniff him. (*Id.*). Nothing was found. Castro then ordered Plaintiff to take a "urine analysis [] test in a cup" but Plaintiff refused because he was so angry and upset over how Castro had treated him. (*Id.*). Accordingly, Castro angrily ordered Defendant A. Roacha, the building floor officer, who "was watching the entire incident," to conduct a urine analysis of Plaintiff. (*Id.*). However, Plaintiff also refused Roacha's order to take a test. (*Id.*).

On October 9, 2019, Plaintiff was called to D-Yard's program office to pick up copies of his rules violation report (RVR) (log # 6915838), issued by Roacha, for refusal to submit to a urine analysis. (*Id.*; *see also id.* at 11-12). On October 13, 2019, Plaintiff went to D-Yard's program office to report "a prison rape elimination act (PREA) incident" regarding the events of October 2, 2019, involving Castro. (*Id.* at 8). Plaintiff was interviewed and gave a video deposition to an ISU Sergeant. (*Id.* at 9). On October 16, 2019, Plaintiff went to the D-Yard program office to pickup another RVR (log # 6919201) for the same refusal of the urine analysis test, which was issued by Roacha. (*Id.*). However, on this second RVR, the location of the incident was Plaintiff's cell rather than the dayroom as documented in the first RVR. (*Id.*). There was also an "added statement" that Plaintiff showed signs consistent with "needle tracks on both insides of his elbows and that the Plaintiff conspired to the refusal to produce urine sample for testing of controlled substances." (*Id.*).

On October 21, 2019, Plaintiff filled out a CDCR 22 form, asking Captain J. Fogal for an investigative employee and for Castro and Roacha to be present at his RVR (log # 6915838) hearing. (*Id.*). Captain Fogal told Plaintiff that he needed a senior hearing officer, a lieutenant, who could appoint an investigative employee. (*Id.*). However, Captain Fogal responded too late because, on October 22, 2019, when Plaintiff was at his assigned workplace, he was ordered by the Dining Hall Officer to go straight to D-Yard's program office. (*Id.*).

Plaintiff met with Defendant Arredondo and explained to him that he was pulled out of his work assignment and did not have the chance to go back to his cell to grab his manilla envelope with the two RVRs that he had received so that he could defend himself at his hearing. (*Id.* at 9-10). Arredondo told Plaintiff that he "can't go and won't be going anywhere for anything." (*Id.* at 10). Plaintiff asked Arredondo to appoint an investigative employee, for Castro and Roacha to be present, and for Plaintiff's witness, E. Cruz, a fellow inmate, to be present. (*Id.*). Plaintiff explained to Arredondo that, after he reported Castro's wrongful conduct regarding the October 2, 2019 events, Roacha issued a second RVR for the same incident as the first RVR, except that the incident now occurred in Plaintiff's cell rather than the dayroom and there was an added statement about Plaintiff having needle tracks and conspiring to refuse the urine analysis testing. (*Id.* at 10-11). Arredondo told Plaintiff this information was irrelevant to the RVR (log # 6919201) hearing and that "maybe next time you'll think twice before reporting any of my officers' misconduct and no one will falsify anything on you." (*Id.* at 11). Arredondo then denied Plaintiff the right to have an investigative employee appointed, denied his request for Castro, Roacha, and Plaintiff's witness to be present at the hearing, and found Plaintiff guilty of RVR (log # 6919201). (*Id.*).

As a result, the following penalties were imposed: thirty days' loss of good-time credits, ninety days' loss of work payments, thirty days' loss of canteen privileges, thirty days' loss of phone call privileges, thirty days' loss of dayroom privileges, thirty days' loss of package privileges, ninety days' loss of visiting privileges, and one month of mandatory drug testing. (*Id.*).

After the hearing, Plaintiff went back to his building and asked Roacha "to respond on

this CDCR 22 request form" why he issued a first RVR and then a second RVR. (*Id.*). Roacha responded that he saw Plaintiff arguing with Castro and that he was ordered to test the Plaintiff after the Plaintiff's behavior, which led up to Plaintiff's refusal of the urine analysis test. (*Id.* at 12). Plaintiff told Roacha that he was going to file a grievance regarding Roacha's wrongful conduct and for falsifying the RVRs. (*Id.*). Roacha responded, "Good luck, f**king piece of s**t." (*Id.*).

On October 22, 2019, Plaintiff filed a grievance relating to the October 2, 2019 incident and was interviewed by an unknown ISU officer for his "retaliation claims." (*Id.*). Plaintiff stated that he believed that he was being retaliated against for reporting the October 2, 2019 incident, stating that Roacha falsified RVRs. (*Id.*). Plaintiff was later interviewed by Lieutenant Stiles regarding the October 2, 2019 incident and recounted his belief that he was being retaliated against. (*Id.*). On November 10, 2019, Plaintiff submitted a grievance regarding Roacha issuing RVRs and was briefly interviewed about it. (*Id.* at 13).

Plaintiff's complaint list the following three claims: (1) Fourth Amendment violation by Castro; (2) Eighth Amendment violation by Castro; and (3) Due Process violation by Arredondo.[2] (ECF No. 9, pp. 15-18). Plaintiff seeks money damages for the alleged violations of his constitutional rights. (*Id.* at 21-22).

## IV. ANALYSIS OF PLAINTIFF'S COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely

---

[2] While Plaintiff previously asserted retaliation claims in his initial complaint and sued Roacha, he has not realleged those claims in his first amended complaint or named Roacha as a Defendant. Accordingly, the Court will not address any retaliation claims or claims that could have been brought against Roacha.

provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

**B. Fourth Amendment**

Plaintiff's first claim alleges that Defendant Castro violated his right to be free from unreasonable searches in violation to the Fourth Amendment of the United States Constitution.

(ECF No. 9, p. 15). The Fourth Amendment prohibits only unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Byrd v. Maricopa County Sheriff's Office*, 629 F.3d 1135, 1140 (9th Cir. 2011); *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. Factors that must be evaluated are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*; *Bull v. City and Cnty. of San Francisco*, 595 F.3d 964, 972 (9th Cir. 2010) (en banc).

The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. *Bull*, 595 F.3d at 974–75. "[I]ncarcerated prisoners retain a limited right to bodily privacy." *Michenfelder*, 860 F.2d at 333. The Ninth Circuit has long recognized that "[t]he desire to shield one's unclothed figure from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963); *see also Michenfelder*, 860 F.2d at 333 (same). "The [Supreme] Court [has] obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Michenfelder*, 860 F.2d at 332.

Plaintiff alleges that, after Castro accused him of making police siren noises and challenged him to a fight, he forced Plaintiff to submit an "unclothed body search" in which he repeatedly forced Plaintiff to manipulate his genitalia, telling him "that he's not doing it exactly how he's ordering the Plaintiff to do it." (ECF No. 9, p. 7). Based on the allegations in the complaint, there is a reasonable inference that Castro did not have a legitimate reason for ordering Plaintiff to be strip searched in such a manner simply because Plaintiff allegedly made police siren noises. Based on these allegations, the Court concludes that Plaintiff has sufficiently alleged, for screening purposes, that the strip search was unreasonable in violation of the Fourth Amendment, and thus Plaintiff has stated a cognizable Fourth Amendment claim against Castro.

**C. Eighth Amendment**

Plaintiff's second claim alleges that Defendant Castro violated his rights under the Eighth Amendment of the United States Constitution. (ECF No. 9, p. 16).

"The Eighth Amendment proscribes the infliction of cruel and unusual punishment on prisoners." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000). Whether a particular action constitutes '"cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society."' *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). However, force used maliciously and sadistically to cause harm always violates contemporary standards of decency. *Id.*

Importantly, "[a] sexual assault on an inmate by a guard—regardless of the gender of the guard or of the prisoner—is deeply 'offensive to human dignity."' *Id.* (quoting *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir.1991)); *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012) ("Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment."). "Where there is no legitimate penological purpose for a prison official's conduct, courts have 'presum[ed] malicious and sadistic intent.'" *Wood*, 692 F.3d at 1050 (alteration in original) (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999)). And "[w]here guards themselves are responsible for the rape and sexual abuse of inmates, qualified immunity offers no shield." *Schwenk*, 204 F.3d at 1197. "In evaluating a prisoner's claim, courts consider whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Wood*, 692 F.3d at 1046 (quoting *Hudson*, 503 U.S. at 8).

Plaintiff alleges that Castro forced him to submit an "unclothed body search," manipulate his genitalia and other sensitive parts of his body repeatedly, and then to place his fingers in his mouth and swirl them around his gums. (ECF No. 9, p. 7). Based on the allegations, and construing the facts in favor of the Plaintiff for screening purposes only, Castro's actions appear to have lacked a legitimate penological purpose and appear to have been done with malicious or sadistic intent. Thus, the Court concludes that Plaintiff has, for screening purposes, stated an Eighth Amendment claim against Castro.

**D. Due Process**

Plaintiff's sixth claim alleges that Defendant Arredondo violated his due process rights under the Fourteenth Amendment of the United States Constitution by denying him, among other things, the opportunity to collect his RVRs from his assigned housing, the assistance of an investigative employee, and the opportunity to have a witness present at his hearing. (ECF No. 9, p. 18). Notably, he alleges that multiple penalties were imposed as a result of his guilty finding, pertinent here, including thirty days' loss of good-time credits.

"[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. He must seek federal habeas corpus relief (or appropriate state relief) instead." *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (citations and internal quotation marks omitted).

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. This "favorable termination rule" preserves the rule that federal challenges, which, if successful, would necessarily imply the invalidity of confinement or its duration, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues of relief. *Muhammad v. Close*, 540 U.S. 749, 750-751 (2004). Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 81-82.

The Supreme Court has extended the favorable termination rule to prison disciplinary proceedings. *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *Nettles v. Grounds*, 830 F.3d 922, 927-29 (9th Cir. 2016). Most notably, the Supreme Court has concluded that a request for money damages for depriving a prisoner of good-time credit without due process of law in a prison disciplinary proceeding is subject to a *Heck* bar. *Edwards v. Balisok*, 520 U.S. 641, 645

(1997) (concluding that due-process claim was *Heck*-barred where prisoner challenged, among other things, the loss of thirty days' good-time credits).

Here Plaintiff's challenge to the alleged lack of due process in connection with his disciplinary proceedings cannot proceed because it challenges a finding that extended the duration of his confinement. Notably, Plaintiff alleges that the October 2, 2019 incident led to RVRs, with Arredondo failing to ensure that Plaintiff could retrieve his RVRs, have the assistance of an investigate employee, and call a witness at his hearing. As a result, Plaintiff lost privileges and thirty days' of good-time credits. (ECF No. 9, p. 19).

Accordingly, success in this action would necessarily imply the invalidity of the duration of Plaintiff's confinement.[3] *Edwards*, 520 U.S. at 645; *see Thompson v. Bradburry*, No. 14-CV-01988-HSG (PR), 2015 WL 3491846, at *8 (N.D. Cal. June 2, 2015) ("A Section 1983 claim based on allegations that plaintiff was completely denied the opportunity to put on a defense and that there was deceit and bias on the part of the decisionmaker, for example, necessarily implies the invalidity of the punishment imposed and is barred by *Heck*."). Thus, this claim is *Heck*-barred. If Plaintiff wishes to bring these claims, "[h]e must seek federal habeas corpus relief (or appropriate state relief)." *Dotson*, 544 U.S. at 78. If Plaintiff's habeas challenge is successful, he may then bring his claims pursuant to § 1983.

**E. Request for a Copy of the Complaint**

Plaintiff has filed a declaration with his first amended complaint asking if he must e-file his first amended complaint and stating that he is unable due to do so because of COVID protocols at his prison. (ECF No. 10). Relatedly, he states that he is unable to make a copy of his first amended complaint and requests that the Court send him a courtesy copy.

Plaintiff is advised that he is not required to e-file his first amended complaint or any future filing in this case. Plaintiff also asked for a copy of his initial complaint, which the Court provided. (ECF No. 8, pp. 16-17). As noted in the Court's prior order, generally, "[t]he Court

[3] If Plaintiff believes the punishment for the RVR did not affect the duration of his sentence, including if he is serving an indeterminate sentence, he may file objections to these findings and recommendations explaining that position.

will not make copies of filed documents or provide postage or envelopes for free even for parties proceeding *in forma pauperis*." (ECF No. 3, p. 3) (emphasis added). Rather, the Clerk charges $.50 per copied page. *See* Judicial Conference Schedule of Fees ¶ 4; 28 U.S.C. § 1914.

The Court will grant Plaintiff's request one more time and direct the Clerk to mail Plaintiff a courtesy copy of his first amended complaint along with this order. However, Plaintiff will be required to pay for further requests for copies from the Court.

## V. CONCLUSION, ORDER, AND RECOMMENDATIONS

Accordingly, IT IS ORDERED that the Clerk shall (1) assign a district judge to this case and (2) send Plaintiff a courtesy copy of his first amended complaint (ECF No. 9).

The Court has screened Plaintiff's complaint and finds that the following claims should proceed past screening: Plaintiff's Fourth and Eighth Amendment claims against Defendant Castro. However, the due-process claim against Defendant Arredondo should be dismissed as *Heck*-barred.

The Court previously explained to Plaintiff the deficiencies in his initial complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff an opportunity to amend his complaint. Plaintiff filed his first amended complaint with the benefit of the information provided by the Court. The Court does not recommend further leave to amend.[4]

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's Fourth and Eighth Amendment claims against Defendant Castro;

2. Plaintiff's due-process claim against Defendant Arredondo be dismissed;[5] and

3. The Clerk of Court be directed to terminate Defendant Arredondo from the docket;

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within

---

[4] As noted above, if Plaintiff believes there is a reason his due-process claim regarding the RVR is not *Heck*-barred, he may so state in the objections to these findings and recommendation.

[5] If Plaintiff brings a successful habeas action, this order will not prevent Plaintiff from raising the § 1983 claim at that time.

twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 28, 2022**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE